### No. 8779.
### Orleans Appeal.

---

### AMERICAN PAINT WORKS, Appellant, v. METAIRIE RIDGE NURSERY CO.

(January 5, 1925, Opinion and Decree.)
(February 2, 1925, Rehearing Refused.)

*(Syllabus by the Court.)*

1. **Louisiana Digest, Sales—Par. 218.**
A manufacturer of paint warrants that it is fit for the purposes for which it is sold.
2. **Louisiana Digest, Sales—Par. 244; Damages—Par. 69, 74.**
The measure of damages suffered by an owner for defective materials furnished is the cost of doing the work with proper materials.
(Civil Code, Art. 2769, Editor's note.)

Appeal from Civil District Court, Hon. Fred. D. King, Judge.

This is a suit for paints, oils, etc., sold by plaintiffs to defendant. Judgment against plaintiff in main demand and judgment in favor of defendant on reconventional demand. Plaintiff appealed.

Judgment against plaintiff affirmed and in favor of defendant reversed.

Hall, Monroe & Lemann, W. K. Leverich, attorneys for plaintiffs and appellant.

W. W. Wall, attorney for defendant and appellee.

CLAIBORNE, J. This is a suit for $1,876.65 for paints, oils, etc., sold by plaintiffs to defendant, less a credit of $15.35.

Defendants denied any indebtedness, but averred that plaintiffs did sell to him the paints and oils represented as being a high grade paint composed of white lead and linseed oil, whereas the article delivered was a worthless mixture containing practically no white lead or oil; that said paint was sold to him to paint the buildings Nos. 135-137-139 Carondelet Street for which the plaintiff charged the same price as for first quality lead paints; that the substance delivered to him, as paint, was an adulterated product of no value whatever; that, believing that plaintiff had delivered the paint he had agreed to sell and that plaintiff had agreed to buy, the plaintiff caused said building to be painted with said substance, that almost immediately after said buildings were painted, the alleged paint began to peel and scale from the walls and ceilings; that it will be necessary to have all said buildings scraped and repainted with real paint; that the scraping of the paint and repainting of the buildings will cost $5,000, which he claims in reconvention.

There was judgment rejecting plaintiff's demand, and in favor of defendant against the plaintiff for $2,200.

There is no denial of the fact that the materials mentioned in plaintiffs' itemized account were furnished to the defendant. The only defense is that the materials were inferior in quality and that within three months after their application upon the walls they peeled off. The only question in this case is whether the plaintiff delivered to the defendant a paint different from that which he had agreed to sell and whether it was the plaintiffs' fault that the paint peeled off from some of the walls.

The facts of the case are that defendants, wishing to paint their building, inside and outside, bought their paint from the plaintiff. The plaintiff is a manufacturer in this city of two brands of paint: One called "Climatic" and the other "Shellite", the former for exterior, and the other for interior painting, well known to the defendants.

The defendants employed one Allison, a boss painter, to do the painting and to furnish the labor and equipments. He was to receive the money from the defendants for his weekly pay rolls, and the compensation for his services was to be ten per cent of the cost.

The defendants were represented by a committee composed of its President, Harry Papworth; Schabmaier, Treasurer, and Lind, Secretary. There was no written contract between the plaintiff and the defendant. Papworth, and no one else, made the verbal negotiations for furnishing the paint. The plaintiffs were represented by Dr. G. A. Mac Diarmid, its President.

Papworth says that "the contract was to supply enough paint to paint the entire building outside and inside, and to use nothing but the best linseed oil and turps and St. Louis white lead, none but pure paint", and that the Doctor told him that he would not give him anything but pure white lead.

Dr. Mac Diarmid testified that he made no "contract with Mr. Papworth; he was positive; and that he never mentioned to him that he would furnish him with pure St. Louis lead and linseed oil."

The testimony of Papworth is evasive and entirely unreliable. He swears that he did not order the paint, that he wasn't in town; in the next sentence he admits that he gave out the contract for it, to Dr. Mac Diarmid. He swears that he had no contract with Allison to do the painting; that he had nothing at all to do with him; yet he admits that he gave him the job. He swears there was no price mentioned with Allison; yet Lind testifies as to the terms and conditions mentioned above.

Papworth swears there was a written contract with the plaintiffs for the paint; but he does not know what has become of it. Neither Schatmeier nor Lind know of any such writing.

It is true that Schatmeier says he was present when Papworth ordered the paint and that Papworth said "he wanted the best quality of paint and in light colors", but Schatmeier says nothing about "St. Louis white lead".

Papworth says he has been using paint nearly all his life, and knows pretty near as much as one-half of the painters in town, and that he can tell good paint from bad. Schatmeier also says that he has "done quite a little" painting in his life.

If these defendants had a contract for the best "St. Louis White Lead" it is strange that it should have escaped their attention as members of the Committee that no barrel, nor keg, nor can labelled "St. Louis White Lead" had been delivered to them. The conclusion is inevitable, that they had bought the product of plaintiffs' plant, and that they knew that it was the article delivered to them.

The boss painter, Allison, supervised the material, and he must have known that no "St. Louis White Lead" was delivered on the job.

Paint was delivered from September 8 to November 28, 1919. Yet no complaint was registered against the quality or brand of the paint from Allison or the Committee for defendants.

If defendants had protested against the quality or brand of paint, we must presume that the plaintiffs would have acquiesced and furnished any other brand, as they had no contract for any particular brand, quantity, or price, but the silence of defendants in receiving and using the paint was an acquiescence in the brand of paint delivered.

We are bound to conclude, therefore, that the plaintiffs did not agree to furnish St. Louis White Lead, and that the defendants were receiving what they expected, that is, the Climatic and Shellite paints manufactured by the plaintiffs.

But as manufacturers plaintiffs were obliged to warrant that the material they sold was paint with all the ordinary qualities of paint and if that material fell below standard that they would have no right to exact the price of good paint. Templeman Bros. Lumber Co. vs. Fairbanks, Morse and Co., 129 La. 983, 57 South. 309. The preponderance of the evidence is that all the paint upon some of the walls peeled and dropped off into flakes. The plaintiffs made no attempt to show that the paint sold and delivered by them was good. Neither Allison nor any one painter who had actually applied the paint was examined in their behalf. Several witnesses for the plaintiffs testified that the walls were damp and caused the paint to crack and peel off in flakes.

But their testimony is not conclusive and should have been corroborated by the painters themselves.

The painting was not applied to the walls alone. We presume the doors, and door frames, the windows and frames, and other woodwork in the building were also painted. Of these no complaint was made; on the contrary, it is admitted that it did not peel off from the Beaver Boards.

But the plaintiffs have not shown how much of the paint was applied to the woodwork and how much to the walls. We assume that the value of the paint used on the woodwork is offset by the cost of repainting the walls, and that therefore the plaintiffs are not entitled to recover the value of the paint used upon the woodwork.

But the defendants are not entitled to recover upon their reconventional demand.

It is not made out with any degree of certainty. A witness testifies offhand without examination that it might cost five or six thousand dollars to scrape off all the plaintiffs' paint and to apply good paint. But there is no evidence that it is necessary to scrape off all the paint everywhere. The evidence on that subject is confined to two offices and to the hall of the second floor and to the front wall. Schatmaier says that a few minutes after the paint was put upon the walls, it acted like mud and water. If with that knowledge they continued to apply the paint, they brought on their own loss.

But because the materials furnished were partially unfitted for use does not justify the defendants in refusing to pay for that part which has inured to their benefit. The remedy was to have had the work done over in a proper manner and to have deducted the cost from the whole price due for the paint. 1 H. D. 807, No. 25 C. C. 2769; 2 H. D. 1025 No. 4; 2 Breaux Dig. 657, No. 15; 12 Ct. App. 126.

The defendants have made over only one or two rooms and there is no evidence of the cost; concerning the front wall a witness testifies that it is "as good as a job would be for a cheap paint with the exception of the cornices, which are scaling".

This case was tried in April, 1922, nearly three years after plaintiffs' paint had been applied, and there is no evidence that any new painting was done.

It would not be justice to deny plaintiffs a judgment for the price of paint sold by them, and to condemn them, besides, to pay defendants a sum of money which they have not disbursed, or to pay damages which it is not shown they have suffered.

It is therefore ordered that the judgment of the trial court rejecting the demand of plaintiff against the defendant be affirmed; and that the judgment of the trial court in favor of the plaintiff in reconvention, the Metairie Ridge Nursery Company, against the defendant in reconvention, the American Paint Works, Inc., be reversed and set aside, and that there now be judgment in favor of said American Paint Works, Inc., and against the Metairie Ridge

Nursery Company rejecting their reconventional demand at their cost.

It is further ordered that the Metairie Ridge Nursery Company pay the costs of appeal.

Judgment against plaintiff affirmed and in favor of defendant reversed.